OPINION
{¶ 1} Defendant-appellant Charlene Manley appeals from her conviction and sentence for Aggravated Menacing, following a bench trial. Manley contends that her conviction is not supported by the evidence, and is against the manifest weight of the evidence. She also contends that the trial court erred by permitting the alleged victim to testify, over objection, concerning reports the victim had received from others concerning Manley's propensity for violence.
 {¶ 2} Based upon our review of the evidence in the record, we conclude that there is evidence in the record to support the charge, and that the conviction is not against the manifest weight of the evidence. Because an element of the offense of Aggravated Menacing is the victim's belief that the offender will cause serious physical harm, we conclude that the evidence to which Manley objected was admissible, not to prove that Manley had, in fact, a propensity for violence, but to prove that the victim had a belief that Manley, who had threatened to kill her, would cause her serious physical harm. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} The circumstances of Manley's first meeting with the alleged victim, Deborah Collins, which form the basis for the charged offense, are described by Collins in her testimony as follows:
 {¶ 4} "Q. Okay. So you saw her [Manley] coming up the walk? What happened next?
 {¶ 5} "A. She was almost at the door and getting ready to knock when I got to the door.
 {¶ 6} "Q. Um-hum.
 {¶ 7} "A. And umm I said um `can I help you?' I didn't know her. Didn't know her — never seen a picture of her.
 {¶ 8} "Q. Okay.
 {¶ 9} "A. Been around her family and there's no pictures anywhere so I didn't know who she was. So umm she says, umm `Are you Deborah?' And I said, `Yeah who wants to know?' And she said, `Well I'm Charlene.' And I said, `Get out of my yard.'
 {¶ 10} "Q. And after you told her to get out of your yard, what happened next?
 {¶ 11} "A. She just stood there and she says, `Well, I want to talk to you.' And I said, `Well I don't want to talk to you, you need to get out my yard.'
 {¶ 12} "Q. Okay.
 {¶ 13} "A. And then she said, umm `If you don't stop messing with my husband, I'm going to kill you.'
 {¶ 14} "Q. Okay. And when she said that umm what did you think she meant by that?
 {¶ 15} "A. I thought she was going to kill me. I heard and understood that she had a gun. And I knew she had beaten up somebody once before. At least once.
 {¶ 16} "THE DEFENSE: Objection.
 {¶ 17} "THE STATE: Your honor, its not being entered (sic) for the truth of the matter asserted but something to show the reason she believed that threats would be carried out.
 {¶ 18} "THE COURT: Overruled. Go ahead please.
 {¶ 19} "Q. Why is it you believe that she would kill you?
 {¶ 20} "A. Because I've heard from more than one person, that she is mean and she's you know she's beaten up some other lady and I was afraid of her.
 {¶ 21} "THE DEFENSE: Same objection your honor.
 {¶ 22} "THE COURT: Okay. Note the objection. Overruled. Go ahead please."
 {¶ 23} Manley was charged with Aggravated Menacing. Following a bench trial, she was convicted, and sentenced accordingly. From her conviction and sentence, Manley appeals.
 II {¶ 24} Manley's first Assignment of Error is as follows:
 {¶ 25} "There was not sufficient evidence to support the trial Court's conviction of the appellant and the conviction is against the manifest weight of the evidence."
 {¶ 26} The offense of which Manley was convicted is Aggravated Menacing, in violation of R.C. 2903.21(A). That statute proscribes the offense as follows:
 {¶ 27} "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person * * *."
 {¶ 28} To convict Manley of this offense, the State was required to prove that the victim, Collins, believed that Manley would cause her serious physical harm, and that this belief was proximately caused by Manley's knowing acts.
 {¶ 29} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. * * *." R.C.2901.22(B).
 {¶ 30} Although Manley denied that she threatened to kill Collins if Collins did not stop seeing Manley's husband, there is testimony in the record, both from Collins and from Kelly Vanleeuwan, that Manley uttered the threat. Although Manley offered evidence to impeach the testimony of Collins and Vanleeuwan, principally by offering evidence that the offense was first reported to police at 11:30 in the morning, despite the fact that both witnesses testified that the incident occurred in the afternoon, there is nothing inherently implausible or incredible in the testimony of the State's witnesses. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. State v. Lawson
(Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 31} We conclude, therefore, that the trial court could reasonably find that Manley threatened to kill Collins if Collins did not stop seeing Manley's husband In the context in which this threat was made, the trial court could reasonably find the existence of serious animosity between the two women, rendering the threat credible. A credible threat to kill someone is sufficient proximate cause for that person to believe that the offender will cause them serious physical harm. Collins testified that she did, in fact, believe that Manley intended to kill her. From all of the evidence in the record, the trial court could reasonably credit that testimony.
 {¶ 32} Thus, there was evidence in the record from which the trial court could find both that collins believed that Manley would cause her serious physical harm, and that Manley's statement to Collins, threatening to kill her, was a proximate cause of that belief. Furthermore, the trial court could reasonably find from this evidence that Manley was aware that her conduct in making the statement would probably cause Collins to believe that Manley would cause her serious physical harm. These are all of the essential elements required to prove Aggravated Menacing. We conclude that there is sufficient evidence in the record to support the judgment of the trial court, and that the judgment is not against the manifest weight of the evidence.
 {¶ 33} Manley's first Assignment of Error is overruled.
 III {¶ 34} Manley's second Assignment of Error is as follows:
 {¶ 35} "The trial court abused its discretion by introducing inadmissible hearsay evidence of the defendant's reputation and Character."
 {¶ 36} Manley objected to Collins' testimony that Collins had "heard and understood that [Manley] had a gun," and that Collins "knew [Manley] had beaten up somebody once before, at least once." Manley also objected to Collins' testimony in response to the question, "Why is it you believe that she would kill you?" to which Collins responded "Because I've heard from more than one person that she is mean and you know she's beaten up some other lady and I was afraid of her."
 {¶ 37} In general, as Manley notes, a criminal defendant must first introduce evidence of her good character before the State may offer evidence of the defendant's bad character or reputation. Evid. R. 404(A). However, as Manley also notes, exceptions to the general rule are provided in Evid. R. 404(B), as follows:
 {¶ 38} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 39} We agree with the State that the evidence elicited from Collins was admissible for a purpose other than for the purpose of showing that Manley acted in conformity with the character or reputation suggested by that evidence. The State was required to prove that Collins believed that Manley would cause her serious physical harm. The testimony to which Manley objected was relevant to that element, which the State was required to prove.
 {¶ 40} Manley cites State v. Hawn (2000)138 Ohio App. 3d 449, for the proposition that evidence that the alleged victim was in fear of the defendant is inadmissible. As the State notes, however, State v. Hawn involved a murder conviction. In a prosecution for murder, the state of mind of the victim is ordinarily irrelevant. The victim may be unaware of the very existence of the defendant up to and including the moment of death, and yet the defendant may still be guilty of murder. By contrast, in the case before us, the fact that Collins believed that Manley would cause her serious physical harm was an essential element of the State's case, which the State was required to prove. Thus, the testimony offered by Collins that her knowledge of Manley's prior acts and of Manley's reputation gave credence to Manley's verbal threat, supporting Collins' fear that Manley would cause her serious physical harm, was introduced for a purpose other than the purpose of showing that Manley acted in conformity with those prior acts and her reputation. In fact, there was no evidence in this case that Manley caused any physical harm to Collins, serious or otherwise. And the State never contended that Manley caused any physical harm to Collins. It is therefore clear that the evidence of Manley's prior bad acts and reputation were admitted for a purpose other than to show that she acted in conformity therewith.
 {¶ 41} Manley's Second Assignment of Error is overruled.
 IV {¶ 42} Both of Manley's Assignments of Error having been overruled, the judgment of the trial court is affirmed.
Grady and Walsh, JJ., concur.
(Judge James E. Walsh of the Twelfth District Court of Appeals, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).